## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | 24-cv-2167 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Magistrate Hon. Heather K. McShain |
| Corporation, RONALD WATTS, former | ) | |
| Chicago Police Sergeant, former P.O. | ) | |
| KALLATT MOHAMMED, P.O. ALVIN | ) | |
| JONES, P.O. ELSWORTH SMITH, Jr. | ) | |
| P.O. LAMONICA LEWIS, PHILIP | ) | |
| CLINE, DANA STARKS and other | ) | |
| as-yet unidentified officers of the | ) | |
| Chicago Police Department, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT RONALD WATTS' ANSWER TO COMPLAINT

Defendant Ronald Watts, by and through his attorneys, JOHNSON & BELL, LTD., hereby submits his Answer and Affirmative Defenses to Plaintiff's Complaint, and states as follows:

1.      Since January 2016, the Circuit Court of Cook County, Illinois has overturned more than 200 wrongful convictions based on the staggering corruption of Sergeant Ronald Watts and his corrupt team of Chicago police officers.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations that 200 convictions have been overturned. Ronald Watts denies the remaining allegations in this paragraph.**

2.      Joseph Roberts was convicted of a crime he did not commit, and his is one of the most recent of the Watts team's wrongful convictions to be overturned.

**ANSWER: Ronald Watts admits that Plaintiff's conviction was overturned but denies the remaining allegations in this paragraph.**

1

3. The crime for which Mr. Roberts was framed never happened; it was completely fabricated by corrupt Chicago police officers.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

4. Mr. Roberts was arrested on July 17, 2007.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

5. Mr. Roberts's arrest occurred at the Ida B. Wells housing complex, a location that was heavily policed by corrupt Chicago police officers.

**ANSWER: Ronald Watts admits that Plaintiff was arrested at the Ida B. Wells housing complex but denies the remaining allegations in this paragraph.**

6. The corrupt officers sought bribes, planted drugs, and falsely accused many people, including Mr. Roberts, of possessing drugs.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

7. The type of encounter these police officers had with Mr. Roberts was unfortunately quite common, and the consequences were dire: false arrests, criminal proceedings, incarcerations, and a subsequent felony record.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

8. Believing that he faced no chance of winning at trial after his July 17, 2007 arrest, Mr. Roberts eventually pled guilty to the false charges.

**ANSWER: Ronald Watts admits Plaintiff pled guilty. Ronald Watts denies the charge against Plaintiff was false. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

9. After Mr. Roberts had completed his sentence, Defendant Watts and another member of his team, Kallatt Mohammed, were caught on tape engaging in the exact type of misconduct that Mr. Roberts has alleged.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

10.     The federal government charged Watts and Mohammed criminally, and the disgraced officers pled guilty and served time in federal prison.

**ANSWER: Ronald Watts admits the allegations in this paragraph relating to the criminal charges, guilty pleas, and prison sentence. Ronald Watts denies the remaining allegations in this paragraph.**

11.     Since then, evidence has come to light showing that Defendant Watts and his crew engaged in a pattern of criminal misconduct against public housing residents and visitors and that Chicago Police Department officials have long known about that pattern.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

12.     The scope of this misconduct cannot be overstated.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

13.     For example, the Chief Justice of Illinois' Court of Claims has written that "many individuals were wrongfully convicted," explaining that "Watts and his team of police officers ran what can only be described as a criminal enterprise right out of the movie 'Training Day.'"

**ANSWER: Ronald Watts admits that the Chief Justice of Illinois's Court of Claims made the statement referenced above. Ronald Watts denies that the statement is true, and denies the remaining allegations in this paragraph.**

14.     The Court of Claims Chief Justice explained that "[o]n many occasions when these residents [of public housing] refused to pay the extortive demands the Watts crew would fabricate drug charges against them."

**ANSWER: Ronald Watts admits that the Chief Justice of Illinois's Court of Claims made the statement referenced above. Ronald Watts denies that the statement is true, and denies the remaining allegations in this paragraph.**

15.     The Illinois Appellate Court, too, has weighed in on the scope of the scandal, repeatedly calling Watts and his team "corrupt police officers" and "criminals" and chastising the

City's police disciplinary oversight body for doing "nothing to slow down the criminals" and their rampant misconduct and perjury.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

16. On or around November 16, 2017, the Cook County State's Attorney Office ("CCSAO") successfully moved to vacate the convictions of fifteen (15) individuals framed by the Watts outfit.

**ANSWER: Based on information and belief, Ronald Watts admits that the convictions were vacated. Ronald Watts denies the remaining allegations in this paragraph.**

17. In light of that decision by the CCSAO and recognizing the scope of misconduct that the City had allowed to flourish unabated for more than a decade, fifteen (15) members of the Watts crew were placed on desk duty.

**ANSWER: Ronald Watts denies the allegations in this paragraph relating to him. Defendant Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

18. Since then, previously convicted petitioners and the CCSAO have successfully moved to vacate many more convictions.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

19. In recognition of the scope of their misconduct, the CSSAO will no longer call many of Watts's team – including at least some Defendants in this case – as witnesses "due to concerns about [their] credibility and alleged involvement in the misconduct of Sergeant Watts."

**ANSWER: Ronald Watts denies the allegations in this paragraph relating to him. Defendant Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

20. Through this lawsuit, Mr. Roberts seeks accountability and compensation for the damage caused by Defendants' misconduct.

**ANSWER: Ronald Watts admits that Plaintiff's complaint seeks damages, but he denies liability to plaintiff for any of the claims asserted in the complaint and/or the damages alleged therein. Ronald Watts denies the remaining allegations in this paragraph.**

21.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Constitution of the United States.

**ANSWER: Ronald Watts admits this action includes claims that purport to be based on 42 U.S.C. § 1983. Ronald Watts denies any of the remaining allegations in this paragraph.**

22.     This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Chicago is a municipal corporation located here, and the events giving rise to the claims asserted herein occurred within this judicial district.

**ANSWER: Ronald Watts admits this Court has jurisdiction over federal and state law claims. Ronald Watts admits venue is proper for the claims asserted in this action and that the City of Chicago is a municipal corporation located in this judicial district. Ronald Watts further admits that the events giving rise to the claims asserted in the complaint occurred within this judicial district.**

23.     Mr. Roberts is 41 years old.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

24.     At all times relevant to this Complaint, Defendants former Chicago Police Sergeant Ronald Watts, former Officer Kallatt Mohammed, former Sergeant Alvin Jones, Officer Elsworth Smith Jr., Officer Douglas Nichols Jr., and Officer Lamonica Lewis were police officers employed by the City of Chicago and acting within the scope of their employment and under the color of law. Collectively, these individual Defendants are referred to as Defendant Officers throughout this Complaint.

**ANSWER: Plaintiff has failed to specify which period constitutes "all times relevant," thus Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

25.    At all relevant times, Defendant Watts was a leader of the Second District Tactical Team that worked the Ida B. Wells housing complex.

**ANSWER: Plaintiff has failed to specify which period constitutes "all relevant times," thus Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

26.    Defendants Mohammed, Jones, Smith, Nichols, and Lewis worked on Watts's tactical team.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

27.    From 2003 through 2007, Defendant Philip Cline was the Superintendent of the Chicago Police Department.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

28.    Subsequently, Defendant Dana Starks was appointed the Interim Superintendent of the Chicago Police Department from 2007 to 2008.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

29.    Defendants Cline and Starks will be referred to as Defendant Supervisory Officers.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

30.    Defendant City of Chicago is a municipal corporation under the laws of the State of Illinois. The City operates the Chicago Police Department ("CPD") and is responsible for the policies, practices, and customs of the City and the CPD.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

31.    During the 2000s, the Ida B. Wells complex was actively patrolled by a tactical team of CPD officers, led by Defendant Watts.

**ANSWER: Ronald Watts admits that he was the Sergeant of a tactical team that actively patrolled the Ida B. Wells homes in the 2000s. Defendants Watts is without knowledge or**

**information sufficient to form a belief as to the allegations of this paragraph that relate to other, unknown, officers.**

32.    Watts and his tactical team members were well known to the residents of Ida B.

Wells and the surrounding area.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

33.    Watts and his tactical team members maintained a visible presence in the Ida B.

Wells area. The Watts team had a reputation in the community for harassing, intimidating, and

fabricating criminal charges against the area's residents and visitors.

**ANSWER: Ronald Watts admits that his team was visible in the Ida B. Wells area.  Ronald Watts denies the remaining allegations in this paragraph.**

34.    The Watts team's pattern of harassment continued with Mr. Roberts.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

35.    In the time leading up to July 17, 2007, Defendant Watts threatened to frame Mr.

Roberts unless Mr. Roberts provided Watts with information about criminal activity in the Ida B.

Wells.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

36.    On July 17, 2007, Mr. Roberts left his uncle's apartment and walked through the

lobby of the 559 E. Browning building in the Ida B. Wells housing complex.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

37.    Officer Jones detained Mr. Roberts. Then Officer Jones said to Mr. Roberts that his

arrest "was a birthday present for Watts," or words to that effect.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

38.    Mr. Roberts did not have any illegal contraband, including drugs, on him.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

39. Officer Jones handcuffed Mr. Roberts and asked him where the drugs were. Then Officers Mohammed and Lewis arrived in the lobby.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

40. Defendant Officers subsequently escorted Mr. Roberts to a vacant apartment where other officers and another arrestee, Jason Brown, were present.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

41. Officer Mohammed, holding a firearm in his hand, asked Mr. Roberts if the gun was his. Mr. Roberts responded that it was not.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

42. Officers Jones and Mohammed repeatedly asked Mr. Roberts and Mr. Brown whose gun it was. Both men denied knowing to who the gun belonged.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

43. Officer Jones then pulled a bag of drugs out of his pocket and told Mr. Roberts and Mr. Brown that if they refused to talk, he was going to attribute the drugs to one of them and the gun to the other.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

44. When Mr. Roberts did not provide Defendant Officers with the sought information, the officers took Mr. Roberts and Mr. Brown to the police station.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

45.     Mr. Roberts was arrested and charged with manufacturing and delivery of heroin and cocaine, as well as unlawful use of a firearm, even though he had neither.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46.     The Defendant Officers prepared false and fabricated police reports related to this arrest.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

47.     On the basis of these false reports, Mr. Roberts was prosecuted for felony drug and gun crimes.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

48.     Even though Mr. Roberts was innocent of the charges, knowing that he risked significantly more time in prison if he went to trial and lost, Mr. Roberts accepted a plea deal.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

49.     Mr. Roberts was sentenced to prison for six (6) years after being detained in county jail.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

50.     Defendant Officers never disclosed to prosecutors that they had fabricated evidence and falsified police reports related to Mr. Roberts's arrest.

**ANSWER: Ronald Watts admits that he never disclosed that he fabricated evidence or reports, because that did not happen. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

51.     Defendant Officers never disclosed to the prosecutors any of their misconduct described herein. If the prosecutors had known that Defendant Officers fabricated evidence and

committed the other misconduct described herein, they would not have pursued the prosecution of Mr. Roberts.

**ANSWER: Ronald Watts admits that he never disclosed that he engaged in misconduct in this case because that did not happen. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

52. It was no secret within the CPD that Watts and his crew engaged in the type of misconduct described herein.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

53. Government officials, including City of Chicago employees, knew about Watts's and his crew's alleged misconduct as early as 1999.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

54. Shortly thereafter, an FBI investigation of Watts and his crew was underway. The FBI investigation took place with the knowledge and occasional participation of the Chicago Police Department's Internal Affairs Division ("IAD").

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

55. Because IAD was kept abreast of the FBI investigation, during the times complained of, City officials—including but not limited to the head of IAD and the CPD superintendents—were aware of credible allegations that Watts and his team were extorting and soliciting bribes from drug dealers.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

56. Watts used a drug dealer named "Big Shorty" to run drugs at the Ida B. Wells complex. Big Shorty would sell the drugs, turning profits over to Watts in exchange for Watts's

protection. Watts used drug dealers as phony informants to conduct illegal searches. Watts also offered to release arrestees if they provided him with weapons, drugs, or money.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

57.    Targets of the FBI investigation extended beyond Watts to members of Watts's tactical team, including some of the Defendant Officers named herein.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

58.    During the times complained of, the FBI investigation generated evidence showing that Watts engaged in systematic extortion, theft, the possession and distribution of drugs for money, planting drugs on subjects, and paying informants with drugs.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

59.    Investigators also determined that Watts and his subordinates had engaged in these activities for years.

**ANSWER: Ronald Watts denies the allegations in this paragraph**

60.    In 2012, after at least a decade of engaging in criminal misconduct, Defendant Watts and Mohammed were caught red-handed, shaking down a person they thought was a drug courier but who was actually an agent for the FBI.

**ANSWER: Ronald Watts admits he pled guilty to theft of government funds based on evidence from an undercover operation involving a cooperating witness working with the FBI. Ronald Watts denies the remaining allegations in this paragraph.**

61.    The U.S. government subsequently charged Watts and Mohammed with federal crimes.

**ANSWER: Ronald Watts admits the allegation in this paragraph.**

62.     Watts and Mohammed both pled guilty to federal criminal charges and were sentenced to terms of imprisonment. *See United States v. Watts,* No. 12- CR-87-1 (N.D. Ill.); *United States v. Mohammed*, No. 12-CR-87-2 (N.D. Ill.).

**ANSWER:** **Ronald Watts admits the allegation in this paragraph.**

63.     In its sentencing memorandum in the criminal case against Watts, the government explained that "[f]or years... the defendant [Watts] used his badge and his position as a sergeant with the Chicago Police Department to shield his own criminal activity from law enforcement scrutiny." Watts's crimes included "stealing drug money and extorting protection payments" from the individuals he was sworn to protect and serve.

**ANSWER:** **Ronald Watts admits the allegations in this paragraph quote a portion of that memorandum. Ronald Watts denies that the allegations in this paragraph are true.**

64.     The government revealed that, for years, Defendant Watts and Mohammed extorted tens of thousands of dollars in bribes from individuals at the Ida B. Wells public housing complex on numerous occasions as part of their duties with the CPD.

**ANSWER:** **Ronald Watts denies the allegations in this paragraph.**

65.     During the sentencing hearing, the government urged Judge Sharon Johnson Coleman to "consider the other criminal conduct that the defendant [Watts] engaged in throughout the course of his career as a police officer," specifically noting that during the federal investigation, Watts "did other things such as putting a false case on the confidential source that was involved in our investigation. Watts had him arrested on drug charges. And the source . . . felt he had no chance of successfully fighting that case, so he pled guilty to a crime he didn't commit." The federal prosecutor wondered aloud "how many times [Watts] might have done something similar when the government was not involved."

**ANSWER:** **Ronald Watts denies the allegations in this paragraph.**

66.     Following the federal indictments of Watts and Mohammed, City officials made efforts to downplay the magnitude of Watts's criminal enterprise.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

67.     Notwithstanding the evidence investigators had amassed over the years pointing to a wide, decade-long criminal enterprise, CPD Superintendent Garry McCarthy publicly stated, "There is nobody involved other than the two officers who were arrested." As described in more detail below, McCarthy was wrong.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

68.     While the federal government was investigating Watts and his crew, a "code of silence" existed within the CPD.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

69.     Under this code, police officers are expected to conceal each other's misconduct, in contravention of their sworn duties, and the penalties for breaking the code of silence within the CPD are severe.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

70.     As one CPD officer has explained, "[The Chicago Police Academy told officers] over and over again we do not break the code of silence. Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

71.     Pursuant to this "code of silence," each of the Defendant Officers concealed from Mr. Roberts information that Watts and his crew members were in fact engaged in a wide-ranging pattern of misconduct. Had this information been disclosed to Mr. Roberts he would have used it to impeach the officers' accounts, which would have changed the outcome of the criminal proceedings instituted against him.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

72.     Also, consistent with this "code of silence," the few people who stood up to Watts and his crew and/or attempted to report his misconduct were either ignored or punished, while Watts and his crew continued to engage in misconduct with impunity.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

73.     In or around 2006, two Chicago police officers, Daniel Echeverria and Shannon Spalding, learned credible information from arrestees that Watts and his crew were engaged in illegal drug activity.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

74.     Officer Echeverria took the allegations seriously and reported them to a CPD supervisor. The supervisor made clear that he was not interested in hearing about the allegations, and he directed Echeverria not to document the allegations.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

75.     Echeverria and Spalding subsequently reported the allegations about Watts and his crew to the FBI. Soon thereafter, Echeverria and Spalding began cooperating with the FBI and actively assisting the FBI with its investigation of Watts and his crew.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

76. When their cooperation became known to officers within their CPD chain of command, Spalding and Echeverria were labeled "rats" within the Department, their lives were threatened, and they endured all manner of professional retaliation by members of the CPD.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

77. Spalding and Echeverria subsequently sued the City for the retaliation they suffered for blowing the whistle on Watts and his crew. On the eve of trial in that case, the City settled for $2 million.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

78. Sometime in the mid-2000s, CPD Officer Michael Spaargaren was assigned to work with Watts in public housing.

**ANSWER: Ronald Watts admits that Michael Spaargaren was a Chicago Police Department officer, and that Watts was a sergeant of the 4512 Tactical Team on which Spaargaren worked. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

79. Spaargaren observed that Watts did not inventory drugs and money that officers seized during arrests, and Spaargaren confronted Watts about the misconduct.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

80. In response, Watts threatened to fabricate allegations of misconduct against Spaargaren and made veiled threats to kill him.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

81. A CPD lieutenant in the chain of command—James Spratte—subsequently warned Spaargaren to keep his mouth shut or his life would be in danger.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

82.     Fearful for his life, Spaargaren opted to take a one-and-a-half-year leave of absence from CPD rather than continue to work under Watts.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

83.     Defendants Watts, Mohammed, and other members of Watts's tactical team accumulated hundreds of citizen complaints concerning violations of citizens' civil rights over the years. These complaints began well before the misconduct Defendants committed against Mr. Roberts. Despite the shocking number of citizen complaints directed against Watts and his team, the City did nothing to stop the misconduct.

**ANSWER: Ronald Watts admits that he was the subject of citizen complaints during the course of his career. Ronald Watts denies the remaining allegations in this paragraph.**

84.     As for the complaints that the City bothered to investigate, the City often failed to seek out known witnesses and corroborating evidence and even ignored corroborating evidence— instead, the City would side with officers' boilerplate denials over complainants and their witnesses, no matter how many citizens came forward with the same type of complaint.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

85.     The Illinois Appellate Court criticized the City for its utter failure to address the misconduct of Watts and his team.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

86.     In multiple instances, the City actually assigned Watts to investigate complaints made against him or members of the team he supervised.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

87.     Despite all the evidence that was amassed over the years of a pattern and practice of criminal misconduct by Defendant Officers, the City never conducted its own investigation of the clear pattern that emerged.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

88.     As City officials were aware, the purpose of the FBI investigation was to investigate and prosecute criminal activity, not to impose discipline and control of the CPD.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

89.     Nothing about the FBI investigation relieved the City of its fundamental responsibility to supervise, discipline, and control its officers.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

90.     Nevertheless, the City completely abdicated this responsibility, allowing the widespread misconduct to continue undeterred throughout the FBI's criminal investigation of Watts and his crew.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

91.     During the FBI investigation, which spanned at least eight years, City officials had reason to believe that Watts and his crew continued engaging in criminal activity on the streets— extorting drug dealers and framing citizens for crimes they did not commit—yet City officials took no steps to prevent these abuses from occurring.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

92.     Instead, City officials let officers on Watts's crew continue to pursue criminal charges against citizens like Mr. Roberts and continue to fabricate false police reports and testify falsely against citizens like Mr. Roberts.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

93.     City officials withheld information they had about the officers' pattern of transgressions—information that citizens like Mr. Roberts could have used to impeach the corrupt officers and defend against the bogus criminal charges brought against them.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

94.     After the extensive scope of Defendant Watts and his crew's corruption came to light, on September 12, 2017, a group of similarly situated innocent victims filed a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 ("Consolidated Petition").

**ANSWER: Ronald Watts admits that Plaintiff and others filed a Consolidated Petition for Relief From Judgment and To Vacate Convictions Pursuant to 735 ILCS 5/2-1401 on September 12, 2017. Ronald Watts denies the remaining allegations in this paragraph.**

95.     In November 2017, former Superintendent of the Chicago Police Department Eddie T. Johnson placed multiple members of Watts's crew on desk duty.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

96.     On November 16, 2017, upon the State's motion, Judge LeRoy K. Martin, Jr. vacated and *nolle prossed* all of the convictions related to the fifteen (15) Petitioners named in the Consolidated Petition.

**ANSWER: On information and belief, Ronald Watts admits the allegations in this paragraph.**

97. In commenting on the extraordinary decision to agree to vacate all the convictions tied to Watts and his team, the head of CCSAO's Conviction Integrity Unit, Mark Rotert, stated that, "In these cases, we concluded, unfortunately, that police were not being truthful and we couldn't have confidence in the integrity of their reports and their testimony."

**ANSWER: Ronald Watts admits that Mark Rotert made that statement. Ronald Watts denies the allegations made by Rotert and the remaining allegations in this paragraph.**

98. On September 24, 2018, eighteen (18) other similarly situated innocent victims were given a semblance of justice. Upon the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions, and the State *nolle prossed* all charges related to the convictions stemming from Watts and his team's wrongful arrests.

**ANSWER: Ronald Watts admits that on September 24, 2018, on the State's motion, Judge LeRoy K. Martin, Jr. vacated 23 convictions, and the State *nolle prossed* charges for certain individuals arrested by the 4512 or 264 tactical team. Ronald Watts denies the remaining allegations contained in this paragraph.**

99. Following this decision, Mr. Rotert explained that "these arrests were purely conjured . . . . [Watts and his team] were basically arresting people and framing them or were claiming they were involved in drug offenses that either didn't occur or didn't occur the way these police officers said."

**ANSWER: Ronald Watts admits that Rotert made that statement. Ronald Watts denies the allegations made by Rotert and the remaining allegations in this paragraph.**

100. At a press conference where she stood side-by-side with many of the exonerated, Cook County State's Attorney-Elect Kimberly Foxx stated that "[t]he system owes an apology to the men who stand behind us."

**ANSWER: Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

101.    On November 2, 2018, seven (7) more victims had eight (8) additional convictions voluntarily dismissed by the CCSAO.

**ANSWER: Ronald Watts admits based on information and belief, that on November 2, 2018, the CCSAO voluntarily dismissed eight convictions of certain individuals. Ronald Watts denies that these individuals were "victims."**

102.    In a press release, CCSA Foxx stated that the "pattern of misconduct" by Watts and his team caused her "to lose confidence in the initial arrests and the validity of these convictions."

**ANSWER: Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

103.    Referring to the exonerees as "victims," Ms. Foxx wished them "a path forward in healing and justice."

**ANSWER: Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

104.    The CCSAO has since voluntarily dismissed additional convictions.

**ANSWER: Ronald Watts admits the allegations in this paragraph.**

105.    On February 24, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "I think it's important that we acknowledge the harm that was caused when we talk about these cases. It's not just these men. It's the erosion of the trust in the justice system when we allow for those [men] to be wrongfully convicted based on the misdeeds of corrupt law enforcement."

**ANSWER: Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

106.    On December 15, 2020, after another mass dismissal and in reference to the Watts scandal, Ms. Foxx stated: "The seeds of distrust for our criminal justice system run deeply in communities most impacted by violence because of people in power like Sergeant Watts and his

cronies who targeted and criminally preyed on these communities, leaving these neighborhoods feeling like their voice didn't matter." Regarding the exonerations, Ms. Foxx went on to state that it is "always the right time to do the right thing" and "never too late to deliver justice" to the Watts-related victims.

**ANSWER:** **Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

107. On February 19, 2021, after yet another mass dismissal, Ms. Foxx stated: "Vacating the convictions of these nine people today who were targeted by former Police Sergeant Watts provides just a fraction of relief for those who spent time in prison, away from their families, as we will never be able to give them that time back."

**ANSWER:** **Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

108. In a press release on November 4, 2021—when five (5) more convictions were dismissed—Ms. Foxx stated: "As prosecutors, we know that harm was caused ...Today is a step towards righting the wrongs of the past and giving these individuals their names back."

**ANSWER:** **Ronald Watts admits that Foxx made that statement. Ronald Watts denies the allegations made by Foxx and the remaining allegations in this paragraph.**

109. On February 1, 2022, during a hearing that resulted in twenty (20) more dismissals of Watts-related convictions, the Presiding Judge of the Cook County Criminal Courts, Erica L. Reddick, called the Watts era "a blight on the criminal justice system."

**ANSWER:** **Ronald Watts admits that Judge Reddick made that statement. Ronald Watts denies the allegations made by Judge Reddick and the remaining allegations in this paragraph.**

110. The CCSAO will no longer call certain members of Watts's crew, including at least some of the Defendant Officers named herein, as witnesses in any pending or future matters due to concerns about their credibility and alleged involvement in misconduct.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

111. Following his exoneration, on February 22, 2024, Mr. Roberts received a certificate of innocence stemming from his arrest and conviction certifying that Mr. Roberts was, in fact, innocent of the crime he was convicted of and should have never been arrested for in the first place.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

112. Because of the Defendants' acts and omissions, Mr. Roberts was subjected to police harassment and unfair criminal proceedings.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

113. The Defendant Officers' misconduct and false accusations subjected Mr. Roberts to a felony conviction and wrongful incarceration before he was exonerated.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

114. The pain and suffering caused by being wrongfully incarcerated has been significant. During his incarceration, Mr. Roberts was deprived of the everyday pleasures of basic human life, and his freedom was taken from him. Since then, Mr. Roberts has had to live with a felony record he did not deserve.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

115. As a result of the foregoing, Mr. Roberts suffered damages proximately caused by Defendants' wrongdoing.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

### Count I: 42 USC 1983 – Due Process

116. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

117. In the manner described more fully above, Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of his constitutional right to due process and a fair trial.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

118. In the manner described more fully above, Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

119. Likewise, in the manner described more fully above, Defendants Philip Cline and Dana Starks, and other as-yet-unidentified CPD supervisors, had knowledge of a pattern of misconduct by Watts and his team. These Defendant Supervisory Officers knew of a substantial risk that Watts and his team would violate the rights of Mr. Roberts and other residents and visitors of the Ida B. Wells complex, and they deliberately chose a course of action that allowed those abuses to continue, thereby condoning those abuses.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

120. The constitutional injuries complained of herein were proximately caused by the intentional misconduct of Defendant Supervisory Officers or were proximately caused when Defendant Supervisory Officers were deliberately or recklessly indifferent to their subordinates'

misconduct, knowing that turning a blind eye to that misconduct would necessarily violate Plaintiff's constitutional rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

121. In addition, Defendant Supervisory Officers themselves concealed exculpatory evidence from Mr. Roberts, specifically information about Watts and his team's pattern of misconduct. In this way, Defendant Supervisory Officers violated Mr. Roberts's due process right to a fair trial deliberately and with reckless disregard for Mr. Roberts's rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

122. Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, denying him of his constitutional right to due process and a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

123. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Mr. Roberts's clear innocence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

124. Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

125.    The City of Chicago is also directly liable for the injuries described in this Count because the City and CPD maintained official policies and customs that were the moving force behind the violation of Plaintiff's rights, and also because the actions of the final policymaking officials for Defendant City of Chicago and CPD were the moving force behind the violation of Plaintiff's rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

126.    At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago maintained a system that violated the due process rights of criminal defendants like Mr. Roberts by concealing exculpatory evidence of Chicago police officers' patterns of misconduct.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

127.    In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Chicago had notice of a widespread practice by its officers and agents under which criminal suspects, such as Mr. Roberts, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false evidence, and were deprived of liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

128.    As a matter of both policy and practice, Defendant City directly encourages, and is

thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, control, and discipline its police officers, such that its failure to do so manifests deliberate indifference. Defendant City's practices lead police officers in the City of Chicago to believe that their actions will never be scrutinized and, in that way, directly encourage further abuses such as those that Mr. Roberts endured.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

129. The above-described widespread practices, which were so well settled as to constitute the de facto policy of the City of Chicago, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. These widespread practices were allowed to flourish because Defendant City and the CPD declined to implement sufficient policies or training, even though the need for such policies and training was obvious. Defendant City and the CPD also declined to implement any legitimate mechanism for oversight or punishment of officers, thereby leading officers to believe that they could violate citizens' constitutional rights with impunity.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

130. Furthermore, the misconduct described in this Complaint was undertaken pursuant to the policy and practices of Defendant City in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago and the CPD, or were actually committed by persons with such final policymaking authority.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

131.    Indeed, municipal policymakers have long been aware of Defendant City's policy and practice of failing to properly train, monitor, investigate, and discipline misconduct by its police officers, but have failed to take action to remedy the problem.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

132.    For example, at a City Council hearing on September 28, 1999, in response to two high-profile unjustified police shootings, then-Superintendent Terry Hillard noted the need for better in-service training on the use of force, early detection of potential problem officers, and officer accountability for the use of force.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

133.    In June 2000, the Chairman of the Committee on Police and Fire of the Chicago City Council submitted an official resolution recognizing that "[Chicago] police officers who do not carry out their responsibilities in a professional manner have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

134.    In 2001, the Justice Coalition of Greater Chicago ("JCGC"), a coalition of more than a hundred community groups, confirmed the findings of that resolution, concluding that the CPD lacked many of the basic tools necessary to identify, monitor, punish, and prevent police misconduct. The JCGC findings were presented to Mayor Richard Daley, Superintendent Hillard, and the Chicago Police Board.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

135. Despite municipal policymakers' knowledge of the City's failed policies and practices to adequately train, supervise, investigate, discipline, and control its police officers, nothing was done to remedy these problems.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

136. As a result, the CPD has continued to respond to complaints of police misconduct inadequately and with undue delay and has continued to recommend discipline in a disproportionately small number of cases.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

137. Indeed, by its own admissions, more than 99% of the time when a citizen complains that his or her civil rights were violated by police officers, the City sides with the police officer and concludes that no violation occurred.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

138. Before she was elected Mayor of the City of Chicago, then-Police Board Chair Lori Lightfoot made clear that "[a]ny of those officers [on Watts team] who remain on the job must be quickly brought to justice through criminal prosecution and/or disciplinary action."

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

139. Yet, as of the filing of this complaint, the Lightfoot administration has not taken the type of action that Ms. Lightfoot demanded before she became mayor.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

140.     Notably, Defendant Watts and his crew are not the first Chicago police officers who were allowed to abuse citizens with impunity over a period of years while the City turned a blind eye.

**ANSWER:** **Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

141.     For instance, in 2001, Chicago Police Officer Joseph Miedzianowski was convicted on federal crime charges, including racketeering and drug conspiracy. The jury found that Miedzianowski engaged in corruption for much of his 22-year police career, using street informants to shake down drug dealers and sell drugs.

**ANSWER:** **Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

142.     Miedzianowski, like Defendant Officers in this case, had accumulated scores of complaints over the years. As the Appellate Court has stated, the Defendant City "did nothing to slow down the criminals. Instead, it informed the corrupt officers about the complaint and named the source." The Defendant City deemed such complaints unfounded or not sustained.

**ANSWER:** **Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

143.     Likewise, in 2011, Chicago police officer Jerome Finnigan was convicted and sentenced on federal criminal charges, including a charge of attempting to hire someone to kill a police officer who Finnigan believed would be a witness against him on his own corruption charges in state court.

**ANSWER:** **Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

144. Finnigan was part of a group of officers in Defendant City's Special Operations Section that carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

145. Finnigan and his crew engaged in their misconduct at about the same time that Mr. Roberts was targeted by Defendant Watts and his crew.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

146. Finnigan, like Defendant Officers in this case, had accumulated scores of citizen complaints over the years, which Defendant City routinely deemed unfounded or not sustained.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him. Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

147. At his sentencing hearing in 2011, Finnigan stated, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

148. In the case of *Klipfel v. Bentsen*, No. 94-cv-6415 (N.D. Ill), a federal jury found that, as of 1994, the CPD maintained a code of silence that facilitated misconduct committed by Miedzianowski.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

149.     Likewise, in the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a jury found that, as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

150.     The same code of silence in place at the CPD during the time periods at issue in the *Klipfel* case and the *Obrycka* case was also in place during the times complained of herein.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

151.     Indeed, the problems found to exist by the jury in *Klipfel* and *Obrycka* continue to this day. In December 2015, then-Mayor Rahm Emanuel acknowledged that a "code of silence" exists within the CPD that encourages cover-ups of police misconduct, and that the City's attempts to deal with police abuse and corruption have never been adequate.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

152.     Even more recently, in January 2020, the CPD's then-interim head Charlie Beck also acknowledged the code of silence.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

153.     The policies, practices, and customs set forth above were the moving force behind the constitutional violations in this case and directly and proximately caused Plaintiff to suffer the grievous injuries and damages set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph that relate to him.  Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

154. Defendant City's investigation of complaints is characterized by unreasonably long delays, despite the relatively straightforward nature of many misconduct claims.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

155. Although Defendant City has long been aware that its supervision, training, and discipline of police officers is entirely inadequate, Defendant City has not enacted any substantive measures to address that deficiency.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

156. Instead, Defendant City continues to inadequately investigate citizen complaints and fails to take action against officers when necessary. It has also failed to modify its officer training programs to reduce misconduct against Chicago residents or to implement a system to identify and track repeat offenders, districts, or units.

**ANSWER: Ronald Watts is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

157. Plaintiff's injuries were caused by CPD officers, agents, and employees of Defendant City of Chicago, including, but not limited to, the individually named Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

## Count II: 42 USC 1983 – Malicious Prosecution and
## Unlawful Pretrial Detention – Fourth and Fourteenth Amendment

158. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

159.   In the manner described more fully above, Defendants, while acting as investigators, individually, jointly, and in conspiracy with each other, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

160.   In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

161.   The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

162.   Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

163.   In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent. This was accomplished through Defendants' fabrication and suppression of evidence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

164.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's clear innocence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

165.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

166.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

167.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago, and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

## Count III:  42 USC 1983 – Failure to Intervene

168.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

169.    In the manner described more fully above, during the constitutional violations described herein, Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

170. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

171. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

172. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

173. Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants, who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

### Count IV: 42 USC 1983
### Conspiracy to Deprive Constitutional Rights

174. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

175. Prior to Plaintiff's conviction, all of the Defendant Officers, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

176.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability by depriving Plaintiff of his rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

177.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

178.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

179.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

180.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

181.    Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Chicago and by Defendants who were final policymakers for Defendant City of Chicago, in the manner described more fully above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

## Count V:  Illinois Law – Malicious Prosecution

182.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

183.    In the manner described more fully above, Defendants accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

184.    In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

185.    The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

186.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

## Count VI:  Illinois Law – Intentional Infliction of Emotional Distress

187.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

188. The actions, omissions, and conduct of Defendant Officers, as set forth above, were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

189. The Defendants' actions were taken under color of law and within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

190. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

### Count VII: Illinois Law – Civil Conspiracy

191. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

192. As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of his rights.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

193. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

194.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and with total disregard of the truth and of Plaintiff's innocence.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

195.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

### Count VIII:  Illinois Law – Respondeat Superior

196.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

197.    While committing the acts alleged in the preceding paragraphs, Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

198.    Defendant City of Chicago is liable as principal for all torts committed by their agents.

**ANSWER: Ronald Watts admits that the City of Chicago has certain statutory and common law obligations in connection with the conduct of its employees or agents. Ronald Watts denies that Plaintiff has accurately stated them here.**

### Count IX:  Illinois Law – Indemnification

199.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER: Ronald Watts adopts and restates his answers and responses to each paragraph of the Complaint as and for his answer and response to this paragraph as if fully stated herein.**

200.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment.

**ANSWER: Ronald Watts admits that the City of Chicago has certain statutory and common law obligations in connection with the conduct of its employees or agents. Ronald Watts denies that Plaintiff has accurately stated them here.**

201.   Defendant Officers were employees, members, and agents of the City of Chicago, acting at all relevant times within the scope of their employment in committing the misconduct described herein.

**ANSWER: Ronald Watts denies the allegations in this paragraph.**

Defendant denies that Plaintiff is entitled to the relief sought, or to any relief whatsoever. Defendant respectfully requests that this Honorable Court enter an order striking and dismissing Plaintiff's Complaint, or for any other relief that this Honorable Court finds equitable and just.

## AFFIRMATIVE DEFENSES

Defendant's investigation of the facts alleged in Plaintiff's Complaint is ongoing, and, accordingly, Defendant reserves the right to assert additional affirmative defenses in the future. Notwithstanding the foregoing, Defendant states the following affirmative and other defenses:

## FIRST AFFIRMATIVE DEFENSE
### (Qualified Immunity)

Defendant Watts is a government official, namely a police officer, who performed discretionary functions. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted defendants could have believed their actions to be lawful, in light of clearly established law and

information that Defendant Watts possessed. Therefore, Defendant Watts is entitled to qualified immunity as to the Plaintiff's claims.

## SECOND AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiff had a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

## THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims in the Complaint are barred by the applicable statutes of limitations.

## FOURTH AFFIRMATIVE DEFENSE

Defendant Watts cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless he individually caused or participated in the alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Mwangangi v. Nielsen,* 48 F.4th 816, 834-35 (7th Cir. 2022) (Easterbrook, J. concurring) ("§ 1983 supports only direct, and not vicarious, liability.").

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims in his complaint are barred by the doctrines of *res judicata*, collateral estoppel, and judicial estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Defendant Watts is entitled to absolute immunity for any and all testimony provided during the underlying criminal court proceedings. *Briscoe v. Lahue,* 460 U.S. 325 (1983), *see also, Stinson v. Gauger,* 868 F.3d 516, 528 (7th Cir. 2015).

## SEVENTH AFFIRMATIVE DEFENSE

Defendant Watts is immune from Plaintiff's state law claims under 745 ILCS 10/2-201 of Illinois Tort Immunity Act. Under 10/2-201 of the Tort Immunity Act, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

## EIGHTH AFFIRMATIVE DEFENSE

Under 745 ILCS 10/2-202 of the Tort Immunity Act, "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."

Defendant Watts was a public employee executing and enforcing the law at all relevant times and did not act "willfully and wantonly while doing so." Plaintiff's state law claims against Defendant Watts are therefore barred under 745 ILCS 10/2-202.

## NINTH AFFIRMATIVE DEFENSE

Under 745 ILCS 10/2-204 of the Tort Immunity Act, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person."

Plaintiff's state law claims against Defendant Watts that are based on evidence of acts or omissions of other persons are barred under 745 ILCS 10/2-204.

## TENTH AFFIRMATIVE DEFENSE

Under 745 ILCS 10/2-208 of the Tort Immunity Act, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

Defendant Watts was a public employee acting within the scope of his employment and to the extent he was involved in instituting or prosecuting any judicial or administrative proceeding, he did not do so maliciously and without probable cause. Plaintiff's state law claims against Defendant Watts are therefore barred under 745 ILCS 10/2-208.

## JURY DEMAND

Defendants demand a trial by jury.

Respectfully submitted,

**RONALD WATTS**
Individual Defendant

By    /s/*Brian P. Gainer*
        Attorney for Ronald Watts

Brian P. Gainer (gainerb@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
Jack A. Gainer (gainerj@jbltd.com)
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Tel: (312) 372-0770